FILED
United States Court of Appeals
Tenth Circuit

September 19, 2013

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re: MARKET CENTER EAST
RETAIL PROPERTY, INC.,

     Debtor,

--------------------------

MARKET CENTER EAST RETAIL
PROPERTY, INC.

     Appellant,

v.

BARAK LURIE; LURIE AND PARK,

     Appellees.

No. 12-2053

---

**APPEAL FROM THE BANKRUPTCY COURT FOR THE
DISTRICT OF NEW MEXICO AND
THE BANKRUPTCY APPELLATE PANEL OF THE TENTH CIRCUIT
(Bankr. No. 09-11696 and BAP No. 11-017-NM)**

---

Submitted on the briefs:

Jane B. Yohalem, Santa Fe, New Mexico, Special Appellate Counsel for
Debtor/Appellant.

James L. Rasmussen and Deron B. Knoner, of Keleher & McLeod, P.A., Albuquerque,
New Mexico, for Appellees.

---

Before **BRISCOE,** Chief Judge, **GORSUCH** and **MATHESON**, Circuit Judges.

**BRISCOE**, Chief Judge.

Debtor-Appellant Market Center East Retail Property, Inc. ("Market Center")

appeals from the Bankruptcy Appellate Panel ("BAP"), which affirmed the bankruptcy

court's award of attorney's fees to Appellees Barak Lurie and his firm, Lurie & Park

(collectively "Lurie"). Lurie was Market Center's attorney in completing the sale of a

retail shopping center to Lowe's Home Center ("Lowe's"). The bankruptcy court

awarded Lurie $350,752.06 in attorney's fees. The BAP affirmed. Market Center argues

that the bankruptcy court erred in calculating the amount of attorney's fees because the

bankruptcy court should have used the lodestar approach in its calculations, that the 11

U.S.C. § 330(a)(3) factors are an exhaustive list of factors that the bankruptcy court is

required to consider, and that Congress intended 11 U.S.C. § 330(a) to be construed

consistently with case law for awarding attorney's fees under federal fee-shifting statutes

such as 42 U.S.C. § 1988. While we do not agree with Market Center in all regards, we

nonetheless reverse and remand.[1]

---

[1] After examining the brief and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of this
appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is, therefore,
submitted without oral argument.

2

# I.  BACKGROUND

## A.    Factual Background

Market Center owned a retail shopping center in Albuquerque, New Mexico.  In August 2008, Market Center entered into a contract to sell the shopping center to Lowe's for $13.5 million.  Lowe's paid a deposit of $105,000, and closing of the transaction was scheduled for February 2009.  In December 2008, Lowe's informed Market Center that it would not complete the transaction, blaming the bad economy.  In February 2009, Danny Lahave, the president and sole shareholder of Market Center, met with Barak Lurie of the California law firm Lurie & Park to discuss filing suit against Lowe's for abandoning its commitment to purchase the shopping center.  In discussing compensation, Lurie proposed that it be paid at its customary rate of $395 per hour, while Lahave proposed that Lurie be paid a contingency fee.  After negotiation, the two parties entered into an agreement that provided Lurie would be paid at the rate of $200 per hour, plus a contingency fee equal to 15% of any sums recovered in damages or the purchase price of the shopping center occurring 90 days or earlier before the date first set for trial.  Lahave and Lurie both believed that a settlement in the range of $200,000 was the maximum amount that they could reasonably expect to recover from Lowe's because of a liquidated damages provision contained in the purchase contract.  Lahave, who was acting with the assistance of his transactions attorney Robert Diener, and Lurie entered into a Retainer Agreement on February 3, 2009.

On February 23, 2009, Lurie filed suit on behalf of Market Center against Lowe's

3

alleging among other claims, breach of contract, breach of the covenant of good faith and fair dealing, fraud in the inducement, and negligent misrepresentation. On April 20, 2009, Lowe's offered to purchase the shopping center for $7.5 million.

Market Center then, on April 22, 2009, filed a petition for Chapter 11 relief. The bankruptcy court found as a matter of fact that Market Center and Lahave knowingly misled Lurie by failing to inform Lurie of the anticipated filing of a bankruptcy petition. On June 10, 2009, Market Center filed an application with the bankruptcy court to employ Lurie to continue to pursue the action against Lowe's on the terms agreed to prior to the bankruptcy filing. The application referenced the fee arrangement between the two parties. Orix Capital Market and the Office of the United States Trustee both filed objections to the application, but both objections were quickly resolved. However, Market Center never submitted a proposed order approving the employment of Lurie to the bankruptcy court, nor did the bankruptcy court ever issue an order adopting a pre-employment contract pursuant to 11 U.S.C. § 328.

On November 6, 2009, Market Center secured an order from the bankruptcy court authorizing the sale of the shopping center to Lowe's, pursuant to a settlement agreement between Market Center and Lowe's in which Lowe's agreed to purchase the shopping center for $9.75 million (down from Lowe's original purchase price of $13.5 million). The purchase price paid for the shopping center would allow all creditors to be paid in full, along with a remainder to be returned to Market Center. The bankruptcy court found that Lurie spent a total of 43.75 hours in its work for Market Center.

4

After the bankruptcy court's approval of the settlement and sale of the shopping center to Lowe's, Market Center sought to withdraw its application to employ Lurie. Lurie objected to the withdrawal. In January 2010, the bankruptcy court approved a Stipulated Employment Order that was filed by Lurie and Market Center pursuant to 11 U.S.C. § 327(e). The order stated that Lurie was entitled to an administrative claim for professional services rendered on and after June 10, 2009. However, the parties disputed: 1) the terms and amount of Lurie's compensation, and 2) Lurie's entitlement to compensation for services between April 22, 2009 (the date Market Center's bankruptcy petition was filed) and June 10, 2009 (the date the application to employ Lurie was filed). The Stipulated Employment Order left the amount of compensation to be determined by the bankruptcy court pursuant to 11 U.S.C. § 330.

In Lurie's application for compensation, Lurie sought compensation in excess of $1.47 million, which is based on a 15% contingency fee on the $9.75 million sales price of the shopping center to Lowe's, plus hourly fees and costs, as well as $9,345.08 in fees, costs, and taxes associated with resisting Market Center's motion to withdraw its application for Lurie's employment. In response, Market Center argued that Lurie's claim should be $17,500, which is calculated as $28,000 (70 billable hours at $400 per hour) less $10,500 already paid. The bankruptcy court found on July 2, 2010, that "the withdrawal of the Barak Lurie employment application was done in complete bad faith on the part of Mr. Lahave." In re Market Center East Retail Property, Inc. (In re Market Center II), 469 B.R. 44, 47 (B.A.P. 10th Cir. 2012) (quotation omitted).

5

**B.** **Procedural Background**

In an opinion filed on March 30, 2011, the bankruptcy court determined the amount of fees to be paid to Lurie. The bankruptcy court noted that pursuant to the parties' Stipulated Employment Order, it was limited to applying 11 U.S.C. § 330 when calculating reasonable attorney's fees. The bankruptcy court determined that under § 330, Lurie is owed $350,752.06 in fees and expenses, which was calculated based on 15% of $2.25 million (the difference between the $9.75 million that Lowe's paid for the shopping center and the $7.5 million that Lowe's had initially offered in settlement proceedings), plus an hourly rate of $200 per hour for Lurie's professional services, plus Lurie's attorney's fees to date in disputing the claim.[2]

By the bankruptcy court's calculation, the fee awarded to Lurie amounted to $8,637.25 per hour, more than twenty times Lurie's standard hourly rate of $400. The bankruptcy court acknowledged that in the approximately forty hours that Lurie spent on Market Center's case, there was "no motion practice, no receipt of discovery, no

---

[2] Specifically, the bankruptcy court's calculation is comprised of four elements:
1. Contingency fee: 15% of $2,250,000              $337,500.00
2. Attorney's fees for April 23, 2009 through June 1, 2009: $760 (hourly rate of $200/hour * 3.80) – $300 (April 30, 2009 additional courtesy discount) + $92.59 (costs)              $552.59
3. Attorney's fees for June 10, 2009 through January 21, 2010: $7,990.00 (hourly rate of $200/hour * 39.95) + $53.98 (costs)          $8,043.98
4. Keleher and McLeod's (Lurie's attorney in its proceeding against Market Center) attorney's fees to date          $4,655.49

Preliminary Total          $350,752.06

In re Market Center East Retail Property, Inc. (In re Market Center I), 448 B.R. 43, 74 (Bankr. D. N.M. 2011).

6

depositions, no filing of a summary judgment motion, and no trial preparation." In re

Market Center East Retail Property, Inc. (In re Market Center I), 448 B.R. 43, 66 (Bankr.

D. N.M. 2011). Nonetheless, the bankruptcy court emphasized that Lurie's strategy of

filing the complaint and pressuring Lowe's for discovery triggered Lowe's willingness to

work out a settlement, and that the "alleged simplicity of the case is likely a testament to

the effectiveness of [Lurie's] approach." Id. The bankruptcy court credited Lurie's

strategy, which resulted in avoiding the liquidated damages provision of the parties'

contract, as being "largely responsible for the excellent result achieved for the estate." Id.

at 53. The bankruptcy court also held that "the lodestar methodology is not the only

permitted compensation arrangement for attorneys." Id. at 61. The bankruptcy court

questioned whether the lodestar approach must be applied in all circumstances, and

questioned whether the lodestar approach should be the default method to calculate

attorney's fees in the absence of a specific agreement. Id. at 62. According to the

bankruptcy court, the lodestar approach makes sense "when there is a no more specific

mechanism for assessing the value of services rendered," but when "there is no lack of

concrete measure . . . the lodestar is less needed or useful." Id.

In determining Lurie's attorney's fee, the bankruptcy court considered each of the

factors listed in 11 U.S.C. § 330(a)(3), as well as each of the factors articulated in

Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). In re Market

Center I, 448 B.R. at 63-69. Market Center appealed the fee award to the BAP. Lurie did

not cross-appeal, but instead took the position that the fee award was within the discretion

7

of the bankruptcy court and should be affirmed.

The BAP affirmed the bankruptcy court's calculation of fees and expenses. The BAP held that § 330 "allows a bankruptcy court to consider more than hours spent and hourly rates as it determines a reasonable fee award." In re Market Center II, 469 B.R. at 55. Accordingly, the BAP concluded that "the bankruptcy court acted well within its discretion in its fee award to Lurie." Id. In reaching its decision, the BAP found that the list of factors contained in § 330(a)(3) is not meant to be exhaustive, and that Congress did not wish to limit a bankruptcy court's consideration of attorney's fees to the factors listed in § 330(a)(3). Id. at 54. Furthermore, the BAP held that case law interpreting the award of reasonable attorney's fees under fee shifting statutes does not limit bankruptcy courts to exclusive use of the lodestar method in determining a reasonable attorney's fee under § 330. The BAP emphasized that "[c]omparing fee awards under the civil rights statutes and the [Bankruptcy] Code is akin to comparing apples and oranges." Id. at 53.

The BAP also rejected Market Center's argument that the bankruptcy court erred in awarding Lurie a contingent fee based upon 15% of $2.25 million. Market Center argued that the award of contingent fees under § 330 was inappropriate because contingent fees are discussed in § 328(a), not in § 330. The BAP held instead that Market Center's argument "ignores the cumulative effect of the statutes." Id. at 54. The BAP was also not persuaded by Market Center's argument that the fee award was an impermissible enhancement of the amounts due Lurie. Id. Instead, the BAP concluded that the fee award did not constitute an enhancement because the fees "reflect[ed] the

8

reasonable value of services performed, given the risks undertaken by Lurie," and that even if the fee award were considered an enhancement, the award is not impermissible per se. Id. at 55.

## II.  DISCUSSION

Market Center raises three issues on appeal:  1) whether the bankruptcy court's and the BAP's construction of 11 U.S.C. § 330 to permit the bankruptcy court, in its discretion, to award a contingent fee, rather than determining a fee based on the lodestar, is consistent with the language and intent of 11 U.S.C. § 330 and with the case law construing 11 U.S.C. § 330; 2) whether both the bankruptcy court and the BAP erred as a matter of law in concluding that the factors listed in 11 U.S.C. § 330(a)(3) for determining a reasonable attorney's fee in a bankruptcy proceeding are a "non-exclusive list" of factors which the bankruptcy court is free to consider, or not consider, in its discretion; and 3) whether Congress intended that 11 U.S.C. § 330(a)(3) be construed consistently with the case law for determining a "reasonable attorney's fee" under the federal fee-shifting statutes such as 42 U.S.C. § 1988.  Aplt. Br. at 2-3.

### A.     Standard of Review

When an appeal is taken from a BAP decision, this court independently reviews the underlying bankruptcy court's decision. In re Commercial Fin. Servs., 427 F.3d 804, 810 (10th Cir. 2005).  The bankruptcy court's legal determinations are reviewed de novo and factual findings are reviewed under the clearly erroneous standard. Id.  "A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing

9

all of the evidence, we are left with the definite and firm conviction that a mistake has

been made." Id. (quotations omitted). Review of the bankruptcy court's factual

determinations in connection with a fee award is highly deferential, and the factual

determinations are reviewed for clear error. Id.

## B. Legal Framework

11 U.S.C. § 330(a)(1) allows for the award of reasonable professional fees in

bankruptcy cases, if the professional is employed under § 327[3] or § 1103[4] of the

Bankruptcy Code:

> After notice to the parties in interest and the United States
> Trustee and a hearing, and subject to sections 326, 328, and

---

[3] 11 U.S.C. § 327 states in relevant part:
(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.
. . . .
(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.
11 U.S.C. § 327(a); § 327(e).

[4] 11. U.S.C. § 1103 states in relevant part:
(a) At a scheduled meeting of a committee appointed under section 1102 of this title, at which a majority of the members of such committee are present, and with the court's approval, such committee may select and authorize the employment by such committee of one or more attorneys, accountants, or other agents, to represent or perform services for such committee.
11 U.S.C. § 1103(a).

10

329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103–

> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
> (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1). See also Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004) ("A debtor's attorney not engaged as provided by § 327 is simply not included within the class of persons eligible for compensation.").[5] Section 330 provides the court with the

---

[5] The parties agree, per the Stipulated Employment Order, that § 330 governs in determining reasonable fees for Lurie. See Aplt. App. at 149 ("The terms of the retainer agreement which are contrary to the provisions of 11 U.S.C. § 330 are void.").

Professional fees may also be awarded pursuant to 11 U.S.C. § 328(a):

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a).

However, § 328 governs when there is prior court approval given to a certain compensation, and the court modifies the agreed upon compensation only for unforeseen developments. See In re Pilgrim's Pride Corp., 690 F.3d 650, 655 n.3 (5th Cir. 2012) ("If prior approval is given to a certain compensation, § 328 controls and the court starts with that approved compensation, modifying it only for developments unforeseen when

(continued...)

11

ability to declare a fee unreasonable and to independently determine reasonable fees.  In re Commercial Fin. Servs., 427 F.3d at 810.  "[B]ankruptcy courts have wide discretion in awarding compensation to attorneys, trustees, and professionals so long as it is reasonable."  Id. (citing In re Miniscribe Corp., 309 F.3d 1234, 1244 (10th Cir. 2002)).  The burden is on the party requesting fees to establish that its request is reasonable.  Id. at 811.  Section 330(a)(3) contains a list of factors for the court to consider in determining the amount of reasonable compensation:

> In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>> (A) the time spent on such services;
>> (B) the rates charged for such services;
>> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

[5](...continued)
originally approved.") (quotations omitted); In re Federal Mogul-Global Inc., 348 F.3d 390, 396-97 (3d Cir. 2003) (explaining that § 330 authorizes a bankruptcy court to award a professional reasonable compensation for actual necessary services rendered, but that when a bankruptcy court has fixed the terms and conditions of an employment application, the court pursuant to § 328 may alter the agreed upon compensation in light of unanticipated developments).  Here, there is no prior court approval given to Lurie's compensation.  Thus, we agree that § 328 is inapplicable in this case.

> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

In this circuit, the adjusted lodestar approach is used to calculate reasonable attorney's fees under 11 U.S.C. § 330(a). In re Commercial Fin. Servs., 427 F.3d at 811. "The lodestar analysis takes into account each of the factors specifically mentioned in § 330(a)(3) plus additional relevant factors." Id. Johnson is a Fifth Circuit case that set forth twelve factors for courts to consider when awarding attorney's fees pursuant to Title VII of the Civil Rights Act of 1964. This circuit first adopted the use of the Johnson factors for the award of attorney's fees in bankruptcy cases in In re Permian Anchor Services, Inc., 649 F.2d 763, 768 (10th Cir. 1981). See id. ("As to the attorneys' fees the cause must be remanded with directions to conduct a hearing applying the standards that are set forth in Johnson v. Georgia Highway Express, Inc."). In re Permian was decided prior to the adoption of § 330 in the Bankruptcy Code. Subsequent to the adoption of § 330, this circuit has continued to consider the Johnson factors in addition to the § 330(a) factors in determining reasonable attorney's fees. See In re Commercial Fin. Servs., 427 F.3d at 811; In re Miniscribe Corp., 309 F.3d 1234, 1244 (10th Cir. 2002) ("This court has long applied the Johnson lodestar factors to assess 'reasonableness' of attorney's fees in a variety of contexts . . . and has also specifically determined that the test applies to attorney fee determinations under § 330(a)(1)."). The twelve Johnson factors are:

13

(1) The time and labor required.
(2) The novelty and difficulty of the questions.
(3) The skill requisite to perform the legal service properly.
(4) The preclusion of other employment by the attorney due to acceptance of the case.
(5) The customary fee.
(6) Whether the fee is fixed or contingent.
(7) Time limitations imposed by the client or the circumstances.
(8) The amount involved and the results obtained.
(9) The experience, reputation, and ability of the attorneys.
(10) The "undesirability" of the case.
(11) The nature and length of the professional relationship with the client.
(12) Awards in similar cases.

Johnson, 488 F.2d at 717-19.

### C. Perdue's Stringent Limitations on Adjustments to the Lodestar Amount Do Not Apply to § 330

Market Center cites at length the Supreme Court case Perdue v. Kenny A. ex rel Winn, 130 S. Ct. 1662 (2010), in support of its argument that the enhancement of attorney's fees under § 330 should be restricted to the three limited exceptions that the Supreme Court identified in Perdue. See Aplt. Br. at 45 ("It is only in the rare circumstance where the lodestar amount does not adequately measure the attorney's true market value that . . . an enhancement is justified."). Given our precedent applying the adjusted lodestar methodology to determine attorney's fees pursuant to § 330, as well as distinctions between the award of attorney's fees in the civil rights context and the award of attorney's fees under § 330 in the bankruptcy context, we agree with the BAP that Perdue's limitations on fee enhancement do not apply to § 330.

14

We first note that <u>Perdue</u> is a civil rights case—not a bankruptcy case. The fee-shifting statute at issue in <u>Perdue</u> is 42 U.S.C. § 1988, which provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." <u>Perdue</u>, 130 S. Ct. at 1670. <u>Perdue</u> dealt with a class action brought by approximately 3,000 children in foster care against their state's governor and various state officials, alleging violations of their constitutional and statutory rights. <u>Id.</u> at 1669. In <u>Perdue</u>, the Supreme Court summarized six established rules concerning federal fee-shifting decisions: (1) "a reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case"; (2) "the lodestar method yields a fee that is presumptively sufficient to achieve this objective"; (3) "enhancements may be awarded in rare and exceptional circumstances"; (4) "the lodestar figure includes most if not all, of the relevant factors constituting a reasonable attorney's fee"; (5) "the burden of proving that an enhancement is necessary must be borne by the fee applicant"; (6) "a fee applicant seeking an enhancement must produce specific evidence that supports the award." <u>Perdue</u>, 130 S. Ct. at 1672-73.

Citing <u>Perdue</u>, Market Center urges this court to limit adjustments to the lodestar amount. In <u>Perdue</u>, the Supreme Court identified only three situations where fee enhancement may be justified: (1) when "the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value"; (2) "if the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted"; and (3) when "an attorney's performance involves exceptional

15

delay in the payment of fees." 130 S. Ct. at 1674-75. The Supreme Court explained that there are few circumstances in which enhancement to the lodestar is justified. According to the Supreme Court, such circumstances are "indeed 'rare' and 'exceptional,' and require specific evidence that the lodestar fee would not have been 'adequate to attract competent counsel.'" Id. at 1674 (quoting Blum v. Stenson, 465 U.S. 886, 897 (1984)).

Market Center does not ask this court to overrule our precedent in applying the adjusted lodestar approach, which considers the Johnson factors in addition to factors enumerated in § 330(a)(3). But applying Perdue's holding to § 330 would do just that. While Perdue allows fee enhancement only in three rare and exceptional circumstances, the adjusted lodestar approach bases the award of attorney's fees in consideration of the twelve Johnson factors in addition to the § 330(a)(3) factors.

The Supreme Court's rationale for its holding in Perdue is primarily based upon calculating attorney's fees in the civil rights context or other fee-shifting statutes, and we conclude that Perdue's rationale does not apply in calculating attorney's fees in the bankruptcy context. Id. at 1669 ("[Perdue] presents the question whether the calculation of an attorney's fee, under federal fee-shifting statutes, based on the 'lodestar,' i.e., the number of hours worked multiplied by the prevailing hourly rates, may be increased due to superior performance and results.") (emphasis added). For instance, the Supreme Court noted that in many cases, attorney's fees awarded under § 1988 are paid by state and local taxpayers. Id. at 1677. This concern does not carry over to the bankruptcy context because professional fees in bankruptcy are usually not borne by taxpayers. The

16

Supreme Court also explained that fee enhancement may be appropriate if the attorney's performance includes an extraordinary outlay of expenses and exceptional delay in the payment of fees, as "[a]n attorney who expects to be compensated under § 1988 presumably understands that payment of fees will generally not come until the end of the case, if at all." Id. at 1674-75. However, § 330 of the Bankruptcy Code is not a fee-shifting statute, and under § 330, the payment of fees does not depend on whether one party has prevailed over the other. In addition, the Supreme Court noted that § 1988 "does not explain what Congress meant by a 'reasonable' fee, and therefore the task of identifying an appropriate methodology for determining a 'reasonable' fee was left for the courts." Id. at 1671. By contrast, Congress defines the meaning of "reasonable" in § 330, and provides a list of factors to guide bankruptcy courts in determining reasonable attorney's fees.

Perdue also emphasizes a distinction between the lodestar approach and application of the Johnson factors. The Supreme Court explained that the lodestar approach has become the "guiding light of our fee-shifting jurisprudence." Id. at 1672. As compared to the Johnson approach, which the Supreme Court criticized for giving "very little actual guidance to district courts," the Court praised the lodestar method as "objective, and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." Id. However, we have recognized that "[u]nder 11 U.S.C. § 330(a)(1), bankruptcy courts have wide discretion in awarding compensation to attorneys, trustees, and professionals so long as it is reasonable." In re

17

Commercial Fin. Servs., 427 F.3d at 810. Further, in this circuit, the lodestar approach and application of the Johnson factors are not mutually exclusive, as the adjusted lodestar approach considers the Johnson factors in addition to the § 330(a)(3) factors.

For these reasons, we conclude that Perdue's limitations on fee enhancements do not apply to the award of attorney's fees under § 330 in the bankruptcy context.[6] Instead, we hold that in determining reasonable attorney's fees pursuant to § 330, the lodestar amount may be enhanced or adjusted downward based on the § 330 factors and the Johnson factors.

## D. The Lodestar Approach

Market Center argues that the bankruptcy court improperly relied on § 328(a)'s authorization of a contingency fee in its calculation of the attorney's fee. Aplt. Br. at 41. Market Center further argues that both the bankruptcy court and the BAP erred as a matter of law in finding that the factors listed in 11 U.S.C. § 330(a)(3) for determining a

---

[6] To date, only one other circuit court has addressed the question of whether the Supreme Court's rationale in Perdue applies to the award of professional fees under § 330(a)(3) in the bankruptcy context. In In re Pilgrim's Pride Corp., 690 F.3d 650, 666-67 (5th Cir. 2012), the Fifth Circuit also answered this question in the negative. The bankruptcy court in In re Pilgrim's Pride refused to grant a $1 million fee enhancement to the debtor's reorganization professionals because they had failed to satisfy the strict requirements of the Perdue holding. Id. at 653. The district court reversed the bankruptcy court, holding that the bankruptcy court erred in treating Perdue as binding in a bankruptcy proceeding. Id. On remand, the bankruptcy court approved the fee enhancement, and the United States Trustee appealed the bankruptcy court's decision to the Fifth Circuit. The Fifth Circuit affirmed the bankruptcy court's $1 million fee enhancement and held that Perdue's holding does not apply in the bankruptcy context. The Fifth Circuit cited its established precedent applying the adjusted lodestar analysis, as well as distinctions between fee-shifting statutes in the civil rights context and the award of reasonable professional fees in the bankruptcy context. Id. at 662-67.

18

reasonable attorney's fee in a bankruptcy proceeding are a "non-exclusive list" of factors which the bankruptcy court is free to consider, or not consider, in its discretion. We conclude that the bankruptcy court erred as a matter of law in holding that it was not obligated to consider the § 330(a)(3) and relevant Johnson factors – and only those factors – when evaluating the reasonableness of attorney's fees under § 330. We also conclude that the bankruptcy court erred in its analysis of the § 330(a) factors.

Although we hold that the bankruptcy court must consider the § 330(a)(3) and Johnson factors in evaluating whether a proposed fee amount is reasonable, this question is distinct from what compensation structures are permitted. Section 330(a) does not mandate any particular fee arrangement. As we have previously noted, a bankruptcy court has "wide discretion" to authorize many types of fee arrangements – provided the total fee is reasonable when considered against the relevant factors.

The bankruptcy court determined that a portion of attorney's fee owed to Lurie was to be calculated based on a contingency basis, namely that Lurie is entitled to 15% of $2.25 million. The bankruptcy court reasoned that the allowance of contingency fees in § 328(a) "make it obvious that the lodestar methodology is not the only permitted compensation arrangement for attorneys." In re Market Center I, 448 B.R. at 61. The bankruptcy court then concluded that "it is not clear . . . that the default position for compensation must be the lodestar in the absence of a specific agreement otherwise." Id. The BAP affirmed the bankruptcy court's holding and emphasized "the cumulative effect" of § 328 and § 330. In re Market Center II, 469 B.R. at 54.

19

We have recognized that "bankruptcy courts have wide discretion in awarding compensation to attorneys, trustees, and professionals so long as it is reasonable." In re Commercial Fin. Servs., 427 F.3d at 810. The bankruptcy court must nonetheless properly consider the § 330(a)(3) and Johnson factors in evaluating whether the compensation is reasonable. Thus, the bankruptcy court erred in holding that it had discretion to ignore any of the § 330(a)(3) factors. In re Market Center I, 448 B.R. at 62. A bankruptcy court has discretion in determining how much weight to assign each factor and in determining the reasonableness of a fee, but this discretion does not extend to disregarding factors prescribed by statute. Section 330 and our case law instruct bankruptcy courts to consider the § 330(a)(3) factors as well as relevant Johnson factors.

Further, the bankruptcy court erred in holding that "Section 330(a)(3) includes a nonexclusive list of factors that a court may (or may not) consider." Id. at 63-64 (emphasis added). We held in In re Commercial Fin. Servs. that bankruptcy courts must consider the § 330(a)(3) factors in awarding reasonable attorney's fees. 427 F.3d at 811 ("[U]nder 11 U.S.C. § 330(a)(3), a bankruptcy court is directed to consider at least five factors, among which four either explicitly or implicitly direct a bankruptcy court to examine the amount of time spent on a project.") (emphasis added). Accordingly, we conclude that the bankruptcy court erred as a matter of law in interpreting 11 U.S.C. § 330.

We also conclude that the bankruptcy court erred in applying the § 330(a)(3) factors. The bankruptcy court concluded that overall, the § 330(a)(3) and Johnson factors

20

weigh in favor of Lurie. In re Market Center I, 448 B.R. at 63-69. The bankruptcy court found that the following factors weigh in favor of Lurie: § 330(a)(3)(A), the time spent on such services; § 330(a)(3)(B), the rates charged for such services; § 330(a)(3)(C), whether the services were necessary to the administration of, or beneficial at the time. The bankruptcy also found that the second, third, sixth, and eighth Johnson factors weigh in favor of Lurie. The bankruptcy court assigned "the most significance to the apparent difficulty of the task at the outset, to [Lurie's] creativity in devising the successful strategy, and especially to the excellent result obtained." Id. at 68-69.

The bankruptcy court found that subsections 330(a)(3)(A), 330(a)(3)(B), 330(a)(3)(C), and 330(a)(3)(D) of § 330 weighed in favor of the fee award for Lurie. Id. at 63-65. In considering § 330(a)(3)(A), "the time spent on such services," the bankruptcy court acknowledged that Lurie spent approximately forty hours on its services to Market Center, and that "[w]ere the compensation in this case calculated by a simple lodestar, [the amount] would constitute an hourly rate of . . . $8,637.25." Id. at 64. The bankruptcy court nonetheless found that § 330(a)(3)(A) weighed in favor of Lurie because "big risk should be met with big reward when the risk-taking has turned out to be successful." Id. However, Lurie did not take a "big risk" in representing Market Center. Lurie spent only about forty hours working on the case, and Lurie did not face the risk that it would not be paid for its work. According to both the Retainer Agreement, pursuant to which Lurie would be paid a hybrid contingency and hourly compensation, as well as the Stipulated Employment Order, under which the two parties agreed that the

21

bankruptcy court would allow Lurie reasonable compensation, Lurie was entitled to be paid for its work. Although both Market Center and Lurie considered the litigation against Lowe's "risky," see id. at 66, Lurie did not take a "big risk" in representing Market Center, especially given that Lurie only worked for approximately forty hours on the case.

The bankruptcy court also relied on the parties' pre-bankruptcy compensation agreement in finding that § 330(a)(3)(A), "the time spent on such services," weighs in favor of Lurie. The bankruptcy court emphasized the fact that the parties initially expected a $200,000 recovery, and that Lurie had initially asked for an hourly compensation while Lahave sought a full contingency compensation. Id. at 64. The bankruptcy court then concluded while it was not bound by the parties' compensation agreement, it is "not precluded from determining in retrospect that the agreed upon terms were and are reasonable and enforceable." Id. The bankruptcy court is correct in concluding that it is not bound by the parties' compensation agreement in calculating reasonable compensation under § 330. As the Ninth Circuit explained, enforcement of pre-bankruptcy fee agreements would "contradict the policy reason for granting administrative expense priorities, which is that the estate as a whole is benefitted if general creditors subordinate their pre-bankruptcy claims in order to secure goods and services necessary to an orderly and economical administration of the estate after the petition is filed." In re Yermakov, 718 F.2d 1465, 1470 (9th Cir. 1983) (holding that reasonable compensation under § 330 should not be determined upon a pre-bankruptcy

contingency fee agreement); see also In re Citation Corp., 493 F.3d 1313, 1319 (11th Cir. 2007) (holding that it was error to emphasize the parties' pre-bankruptcy contract in determining reasonable fees under § 330).

The problem with the bankruptcy court's § 330(a)(3)(A) analysis is that the two issues that it considered—the big risk/big reward argument, as well as the reasonableness of the parties' pre-bankruptcy compensation agreement—do not fall under the § 330(a)(3)(A) factor, "the time spent on such services."  As we stated in In re Commercial Financial Services, "under 11 U.S.C. § 330(a)(3), a bankruptcy court is directed to consider at least five factors, among which four either explicitly or implicitly direct a bankruptcy court to examine the amount of time spent on a project."  427 F.3d at 811-12. It is unclear how an argument of "big risk/big reward" or reasonableness of the parties' pre-bankruptcy compensation agreement is related to "the time spent on such services." A straightforward application of the § 330(a)(3)(A) factor would weigh against a large attorney's fee, as Lurie only spent approximately forty hours on the case.  In fact, the bankruptcy court found that the first Johnson factor, the time and labor required, weighs in favor of Market Center because "the relatively small amount of time expended by [Lurie] . . . weighs against the size of the award."  In re Market Center I, 448 B.R. at 66. See also In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 849 (3d Cir. 1994) ("The remaining § 330(a) factor—the time spent on such services—is a sibling of the lodestar approach's reasonable hours component.").

We recognize that in determining reasonable fees under § 330(a), the bankruptcy

23

judge is accorded wide discretion "due to the fact that no matter how close the court comes to an objective determination of a reasonable fee, the fee determination is still, in the final analysis, a substantially subjective exercise." In re Lan Assocs. XI, L.P., 192 F.3d 109, 122 (3d Cir. 1999) (alterations and quotation omitted). In this case, it was within the bankruptcy court's discretion to consider, for example, that Lahave acted in bad faith in his dealings with Lurie, that Lurie was generally credible, and that Lurie's work should be credited for the final settlement with Lowe's. We also note that all the creditors in this case were repaid in full. Nonetheless, the bankruptcy court erred in assuming that it had discretion to disregard or to look outside the § 330(a)(3)/Johnson factors to evaluate the reasonableness of any attorney's fee. And in its analysis of the § 330(a)(3) factors, the bankruptcy court clearly erred in finding that Lurie took a big risk in representing Market Center. We also conclude that the "big risk/big reward" argument and the parties' pre-bankruptcy compensation agreement are not relevant to the § 330(a)(3)(A) factor, "the time spent on such services."

### III. CONCLUSION

For the foregoing reasons, we REVERSE the bankruptcy court's award of attorney's fees to Lurie and REMAND for further proceedings consistent with this opinion.

24