**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 6, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

In re:  RONALD JAY REYNOLDS;
CHAROLETT KAY REYNOLDS,

    Debtors.

------------------------------

J. KEVIN BIRD, Chapter 7 Trustee;
PRINCE YEATES AND GELDZAHLER,

    Appellants.

No. 19-4150
(D.C. No. 2:18-CV-00398-DAK)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **HOLMES**, and **EID**, Circuit Judges.
_____

Chapter 7 Bankruptcy Trustee J. Kevin Bird and Special Counsel Prince

Yeates Geldzahler ("Special Counsel") appeal the order of the bankruptcy court

granting in part and denying in part Special Counsel's request for compensation

under 11 U.S.C. § 330.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we

affirm the judgment of the bankruptcy court.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I

Co-debtors Ronald and Charolett Reynolds, who are not parties to this appeal, filed for Chapter 7 bankruptcy protection. The Reynolds owned two contiguous parcels of recreational land in central Utah, "Lot #9" and "Lot #11." In their bankruptcy petition, they disclosed that they owned Lot #11 but not Lot #9, having sold it to Gary Black for $1,000 just before the petition date. Black was a realtor who, pre-petition, unsuccessfully attempted to sell both lots for $80,000. In their schedules, the Reynolds listed a value of $25,000 for Lot #11, subject to a lien for $35,550. The Trustee suspected that the sale to Black was an avoidable transfer, that the Reynolds may have undervalued Lot #11, and that there may be grounds to object to the Reynolds' discharge; he obtained leave to hire Special Counsel to assist in investigation and representation in connection with these matters.

Ultimately, the Trustee negotiated the repurchase of Lot #9 from Black for $1,000 and sold both lots for $60,500 in August 2017. The sale netted $15,846.34, after deducting sale closing costs, taxes, and associated fees, and satisfying the lien on Lot #11 and the $1,000 owed to Black. Coupled with recovery of the Reynolds' tax refund and less bank fees, the total balance of the estate after the sale was $18,019.72.

In its "First and Final Application for Allowance of Attorney Fees and Costs," (the "Fee Application"), Special Counsel requested compensation totaling $23,074.94 in attorney fees and costs. In the Trustee's Final Report, the Trustee requested a

commission of $4,484.72 and costs of $35.00. Together, the requests for compensation rendered the estate administratively insolvent by $9,574.94.

The bankruptcy court, exercising its obligation to review the Fee Application under 11 U.S.C. § 330, set a hearing in December 2017. At the hearing, the court noted several concerns regarding the size of Special Counsel's fee request. Those concerns included a lack of evidence of billing judgment and the Trustee's failure to weigh—before engaging outside counsel—the estimated benefits to the unsecured creditors of attempted recovery and sale of the Lots against the estimated expenses in pursuing those actions.

After the hearing, Special Counsel supplemented the Fee Application, reducing Special Counsel's fee request to $12,646.00. The bankruptcy court found that reduction was not made in good faith and did not show good billing judgment because it simply represented the difference between the funds available and the fees requested. The court asserted that the issues for which Special Counsel was hired "were neither novel nor difficult, the tasks did not require extraordinary legal skill, they did not involve undesirable work, and there were no time limitations, other than the motion to extend the objection to discharge deadline." In re Jay, 2018 WL 2176082, at *8 (Bankr. D. Utah May 9, 2018), aff'd sub nom. In re Reynolds, 2019 WL 4645385 (D. Utah Sept. 24, 2019). It found that the request for Special Counsel compensation both evidenced a failure to exercise billing judgment and included requests for services that were unnecessary, duplicative, and excessive.

3

The court further found that, at the time Special Counsel was retained, the Trustee knew, or should have known given the information available to it, that the likely return to creditors if Lot #9 was sold would not exceed the cost of its Special Counsel's services. The Trustee had access to property tax assessments that valued Lot #9 at $660, a plot map showing that an access road bisected Lot #9, and information showing that Lot #9 was not buildable because it rested on a steep hill. As the court noted, the Trustee could have run hypothetical sales of the Lots and generated a reasonable budget that would have ensured Special Counsel's fees did not render the estate administratively insolvent. The court requested evidence of budgeting of this kind at the December hearing, but neither the Trustee nor Special Counsel provided any. The court found that the Trustee and Special Counsel were not reasonably diligent in valuing the lots before incurring substantial fees trying to sell them, which meant that significant portions of Special Counsel's services were not reasonably likely to benefit the estate under 11 U.S.C. § 330(a)(4)(A).

In total, the bankruptcy court allowed all of the fees and costs requested by the Trustee (totaling $4,519.00), all of the costs requested by Special Counsel ($853.44), and $2,896.00 in attorney fees requested by Special Counsel. This allowance resulted in a net distribution to the unsecured creditors of $9,750.56. Special Counsel appealed to the district court, contending the attorney fee award was too low. The district court affirmed the judgment of the bankruptcy court. Special Counsel now appeals to this court.

4

## II

"Where a district court acts in its capacity as a bankruptcy appellate court, we review the bankruptcy court's decision independently." Ahammed v. Sec. Inv'r Prot. Corp. (In re Primeline Sec. Corp.), 295 F.3d 1100, 1105 (10th Cir. 2002). "Under 11 U.S.C. § 330(a)(1), bankruptcy courts have wide discretion in awarding compensation to attorneys, trustees, and professionals so long as it is reasonable." Houlihan Lokey Howard & Zukin Cap. v. Unsecured Creditor's Liquidation Tr. (In re Com. Fin. Servs., Inc.), 427 F.3d 804, 810 (10th Cir. 2005). We review a bankruptcy court's interpretation of § 330 de novo, its related factual findings for clear error, "and its ultimate decision to allow or disallow requested compensation . . . for abuse of discretion." Houlihan Lokey Howard & Zukin Cap. v. Unsecured Creditor's Liquidation Tr. (In re Com. Fin. Servs., Inc.), 298 B.R. 733, 747 (10th Cir. BAP 2003), aff'd, 427 F.3d 804 (10th Cir. 2005).

Our clear-error review of the factual determinations made in connection with a fee award is "highly deferential," because "[t]he bankruptcy judge is on the front line, in the best position to gauge the ongoing interplay of factors and to make the delicate judgment calls which such a decision entails." Connolly v. Harris Tr. Co. (In re Miniscribe Corp.), 309 F.3d 1234, 1244 (10th Cir. 2002) (quotation omitted). When reviewing for abuse of discretion, "we may not substitute our own judgment for that of the [bankruptcy] court." Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc., 685 F.3d 977, 981 (10th Cir. 2012) (quotation omitted). "Under the abuse-of-discretion standard, a trial court's decision will not be disturbed

5

unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Okla. ex rel. Edmondson v. Tyson Foods, Inc., 619 F.3d 1223, 1232 (10th Cir. 2010) (quotation omitted).

Under 11 U.S.C. § 330(a)(1)(A), the bankruptcy court is empowered to award "reasonable compensation for actual, necessary services" to attorneys hired by the trustee to administer an estate. The court is also expressly empowered to "award compensation that is less than the amount of compensation that is requested." § 330(a)(2). When considering an attorney fee application in a Chapter 7 case, the bankruptcy court "shall not allow compensation for . . . unnecessary duplication of services; or . . . services that were not . . . reasonably likely to benefit the debtor's estate; or . . . necessary to the administration of the case." § 330(a)(4)(A). When determining the amount of reasonable compensation, the bankruptcy court uses an "adjusted lodestar" approach, in which it considers the factors enumerated in 11 U.S.C. § 330(a)(3)[1] as well as twelve additional factors. Mkt. Ctr. E. Retail Prop. v. Lurie (In re Mkt. Ctr. E. Retail Prop.), 730 F.3d 1239, 1246 (10th Cir. 2013).[2]

---

[1] Those factors include: time spent; rates charged; necessity or benefit to the administration of a case; reasonableness of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; professional skill or experience in bankruptcy, including board certification; and reasonableness based on customary compensation charged by comparably skilled practitioners in cases other than cases under the bankruptcy code. 11 U.S.C. § 330(a)(3).

[2] The additional factors are:
      (1) The time and labor required.
      (2) The novelty and difficulty of the questions.

Special Counsel advances two primary arguments on appeal. First, it contends the bankruptcy court erred by basing its attorney fee award on a policy rationale that overemphasized ensuring an estate was managed for the benefit of unsecured creditors. It argues the policy behind the post-1979 version of the bankruptcy code did away with the concern that professional fees would consume too much of the estate, and that the adjusted lodestar approach precludes consideration of the trustee's judgment in this light. Special Counsel therefore submits that remand is necessary because it cannot be readily determined to what extent the bankruptcy court's analysis was affected by these views. Second, Special Counsel challenges several individual components of the district court's fee award, asserting it "ignored facts

---

(3) The skill requisite to perform the legal service properly.
(4) The preclusion of other employment by the attorney due to acceptance of the case.
(5) The customary fee.
(6) Whether the fee is fixed or contingent.
(7) Time limitations imposed by the client or the circumstances.
(8) The amount involved and the results obtained.
(9) The experience, reputation, and ability of the attorneys.
(10) The "undesirability" of the case.
(11) The nature and length of the professional relationship with the client.
(12) Awards in similar cases.

Mkt. Ctr. E. Retail Prop. v. Lurie (In re Mkt. Ctr. E. Retail Prop.), 730 F.3d 1239, 1247 (10th Cir. 2013) (quoting Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)).

deserving significant weight, . . . relied on improper facts, and . . . made serious mistakes in weighing the facts."[3]

We are not persuaded. Regarding the first argument, the bankruptcy court's disallowance of some fees requested by Special Counsel as not reasonably likely to benefit the estate is not only permitted but expressly required by 11 U.S.C. § 330(a)(4). And, we have previously held that the question of whether services were beneficial to a bankruptcy estate "must be determined before a reasonableness inquiry may even be conducted." Rubner & Kutner, P.C. v. U.S. Trustee (In re Lederman Enterprises, Inc.), 997 F.2d 1321, 1323 (10th Cir. 1993).

Further, § 330(a)(3)(C) requires consideration of "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title," and the eighth Johnson factor requires consideration of "[t]he amount involved and the results obtained," In re Mkt. Ctr. E. Retail Prop., 730 F.3d at 1247. The district court therefore acted well within its discretion in considering the mismanagement of the estate when it determined a reasonable fee for Special Counsel.

---

[3] Special Counsel further argues that a court abuses its discretion when "improper facts are relied upon," citing a case from the First Circuit Bankruptcy Appellate Panel, Pena v. Gonzalez (In re Pena), 397 B.R. 566, 574 (1st Cir. BAP 2008), which in turn quotes from CRS Steam, Inc. v. Engineering Resources, Inc. (In re CRS Steam, Inc.), 233 B.R. 901, 904 (1st Cir. BAP 1999) and Independent Oil & Chemical Workers of Quincy, Inc. v. Procter & Gamble Manufacturing Co., 864 F.2d 927, 929 (1st Cir. 1988). This citation is misleading. In re Pena and the cases it quotes address a district court's misapplication of factors, not facts. See 397 B.R. at 574, 233 B.R. at 904, 864 F.2d at 929.

8

We further agree with the bankruptcy court that a trustee's power to sell estate property in the first place stems from its fiduciary duty to unsecured creditors. See DeGiacomo v. Traverse (In re Traverse), 753 F.3d 19, 29 (1st Cir. 2014) ("Bankruptcy courts have defined the equity that justifies a sale of property, consistently and explicitly, in one way: the value remaining for unsecured creditors above any secured claims and the debtor's exemption. . . . It is this equity for unsecured creditors that authorizes a trustee to liquidate the property in the first place . . . ."). With respect to the sale of the Lots, the bankruptcy court found the Trustee and Special Counsel did not discharge this duty responsibly: "The problem here is the over-lawyering of an elementary Chapter 7 case that rendered the estate administratively insolvent. If Special Counsel had been conservative and circumspect in the time it put into this case, this outcome may have been avoided – even with the Lots selling for $60,500." In re Jay, 2018 WL 2176082, at *16. The bankruptcy court therefore did not err in disallowing fees on this basis, nor was its judgment tainted by "improper" views regarding the policies underlying 11 U.S.C § 330.

Special Counsel's second argument asks this court to revisit the individual determinations that comprised the bankruptcy court's fee award. Special Counsel challenges, for instance, the reasonableness of the amounts awarded for time spent drafting a demand letter, preparing for a non-evidentiary hearing, and drafting a motion to conduct a Rule 2004 examination. Special Counsel concedes that some of

9

the bankruptcy court's reductions were warranted, but it argues others did not give adequate deference to the Trustee's business judgment.

Special Counsel's entire argument on this point is antithetical to abuse-of-discretion review, in which the issue is not whether we would make the same decision as the bankruptcy court considering the application anew, but whether the court's decision fell within the range of permissible choices under the circumstances. See Edmondson, 619 F.3d at 1232. Having carefully reviewed the record, we have no trouble concluding the bankruptcy court acted within its discretion. It applied the correct legal standards, was not influenced by any improper considerations, and carefully considered the evidence before it in making its fee determination.

## III

For the foregoing reasons, the judgment of the bankruptcy court is affirmed.

Entered for the Court

Carlos F. Lucero
Circuit Judge

10